Receipt number AUSFCC-8603175

THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KELLY KENNELLY**<br><br>  Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>  Defendant. | Case No. __23-425 C__ |

# COMPLAINT

Plaintiff Kelly Kennelly ("Plaintiff" or "Ms. Kennelly"), by counsel, hereby brings this Complaint against Defendant United States of America ("Defendant") to recover back pay, liquidated damages, interest, attorney's fees, and costs caused by Defendant's retaliation against her via denial of overtime hours, restriction of leave, and a negative evaluation after she filed and settled a lawsuit to recover overtime unlawfully withheld under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), 5 U.S.C. § 5596, and other applicable laws.

## JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 5596, 28 U.S.C. §§ 1346 & 1491, and 29 U.S.C. § 216(b).

2. This Court has jurisdiction to issue relief as appropriate given that actual controversies exist regarding Defendant's unlawful acts and omissions under the FLSA, Title 5 of the U.S. Code, and otherwise. *See* 28 U.S.C. §§ 2201 & 2202.

**PARTIES**

3. At all times relevant, Plaintiff Kelly Kennelly has been an "employee" of Defendant in the National Oceanic and Atmospheric Administration, a scientific agency within the United States Department of Commerce ("NOAA").

4. Defendant and the agency at issue (NOAA) are a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(d) & 203(x), and an "executive agency" within the meaning of Title 5 of the U.S. Code, 5 U.S.C. §§ 105, 5541, & 5596.

**FACTUAL ALLEGATIONS**

5. At all times relevant, Ms. Kennelly has worked as a Supervisory Physical Science Technician ("SPST") within the Operations branch of the Missions Operations Division ("MOD") of the Office of Satellite and Product Operations ("OSPO") of NOAA's National Environmental Satellite, Data & Information Service ("NESDIS"), located in Suitland, Maryland.

6. Employees within the Operations branch of MOD are generally responsible for overseeing the observation and operation of government weather satellites in accordance with set NOAA procedure, utilizing their training and considering the needs of particular satellites.

7. Ms. Kennelly's work involves ensuring scheduled operations by communicating and interfacing with support personnel and operations crew members, ensuring that shift reports include clear and concise data on the status of current operations, assisting in engineering activities, anomaly resolution, and other support functions, supporting the continuity of operations, and assisting with other facilities issues as needed.

8. Ms. Kennelly earns pay on an hourly basis, based on working 40 hours per week (or 2080 hours per year).

9. In July 2020, Ms. Kennelly filed a collective action in this Court (Case No. 20-818 C) on behalf of herself and those similarly situated, in which she alleged that she was unlawfully classified as "exempt" and denied overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), 5 U.S.C. § 5596, and other applicable laws. The government settled Ms. Kennelly's case on December 9, 2021. *See* Case No. 20-818 C, ECF No. 18.

10. The government issued payment on the aforementioned settlement in late January, 2022.

11. After the first lawsuit, however, the government continued to fail to pay overtime to Ms. Kennelly.

12. Accordingly, Ms. Kennelly filed a second lawsuit in this Court (Case No. 22-1744C), along with five of her coworkers, seeking additional overtime payment that was not covered by the first lawsuit.[1]

13. However, after filing the first lawsuit and receiving settlement in late January, 2022, Ms. Kennelly has been subject to an increasing campaign of retaliation by the government, which has included targeted restrictions to her overtime, denial of her leave requests, a lower review score, and reductions in her bonus and salary growth.

## RETALIATION BY THE GOVERNMENT

### Rejection of Overtime

14. Ms. Kennelly has historically worked more than 40 hours per week as part of her job duties.

---

[1] Ms. Kennelly's coworkers in the second lawsuit are seeking unpaid overtime covering a look-back period of three years from the date the suit was filed.

3

15. As a government agency dealing with satellites, Ms. Kennelly's department was staffed 24/7 in two shifts: "day" shifts (covering 6:00 AM to 6:00 PM) and "mid" or "night" shifts (covering 6:00 PM to 6:00 AM).

16. Ms. Kennelly's job duties include (1) working as "lead scheduler," ensuring that operations are sufficiently covered, (2) working a compressed shift of 6:00 AM to 4:00 PM four days a week, and (3) working as a "floater" to cover other shifts as needed.

17. Floating shifts, in particular, allow the lead scheduler to pick up overtime hours, resulting in additional pay. And, prior to 2022, Ms. Kennelly had been regularly afforded the opportunity to pick up these floating shifts, resulting in additional overtime hours.

18. In 2021, for example, Ms. Kennelly worked 2,355.5 hours, which included approximately 275.5 overtime hours (or 23 hours per month).

19. Ms. Kennelly relies on these overtime hours to provide a substantial increase to her base pay.

20. However, in September of 2022 – following the government's settlement of Ms. Kennelly's lawsuit – NOAA Branch Chief Seth Clevenstine (who was Plaintiff's supervisor) informed Ms. Kennelly in a meeting that he did not want Kennelly working "mids" for additional overtime (despite Ms. Kennelly's role as a floater).

21. In the same meeting, Mr. Clevenstine stated that the other SPSTs in Ms. Kennelly's department – who were similarly situated to Plaintiff but were not involved in the aforementioned lawsuit – would get priority on requesting overtime over Ms. Kennelly.

22. No valid policy rationale was given as to why Ms. Kennelly (or day shift employees generally) should be less entitled to cover other shifts.

4

23. True to Mr. Clevenstine's comments, in September of 2022, Defendant began denying Ms. Kennelly's requests to work overtime.

24. As a result of Defendant's actions under Paragraphs 20-23, Ms. Kennelly went from working 73 overtime hours in August through September of 2022 (which was the most by SPSTs in her department) to working 9 overtime hours in October through November of 2022, which was the fewest overtime hours worked by all SPSTs in her department.

25. Then, in December of 2022, Mr. Clevenstine announced a formal policy that gave priority for overtime to "crew supervisors" and restricted "day supervisors" (of which Plaintiff was the only one in her department) from signing up for overtime shifts unless all crew supervisors declined.

26. In practice, this new policy specifically restricted Ms. Kennelly (and only Ms. Kennelly) from working overtime shifts.

27. Since Mr. Clevenstine's meeting in September, Ms. Kennelly has worked a total of 39 overtime hours, averaging 3.9 per two-week pay period.[2]

28. By comparison, Ms. Kennelly averaged 10.6 overtime hours per two-week pay period throughout 2021.

29. Ms. Kennelly has therefore suffered a reduction of over 64% in her overtime hours, since Defendant's retaliatory overtime policy was enacted, resulting in a significant reduction on her pay.

30. In an effort to avoid this retaliatory policy, Ms. Kennelly transferred back from day supervisor back to crew supervisor, which is a less preferable role for Ms. Kennelly.

---

[2] In addition, Plaintiff was credited for 24 hours of holiday pay for working during holidays, which was credited for double time.

**Rejection of Leave Requests**

31. In addition to cutting Ms. Kennelly's overtime opportunities, the government has also retaliated against Ms. Kennelly by denying her leave requests.

32. Prior to September of 2022, Ms. Kennelly was consistently able to request leave following a night shift.

33. This is important after covering a night shift, as otherwise Ms. Kennelly would need to stay up for over 24 hours.

34. From December 2020 through September 8, 2022, Ms. Kennelly requested leave on at least 10 separate occasions after a mid-shift, and was approved in each instance without complaint.

35. Starting in September of 2022, however, Seth Clevenstine began rejecting Ms. Kennelly's leave requests and/or pressuring her to revoke her leave requests.

**Lower Performance Evaluation**

36. The government has also retaliated against Ms. Kennelly by lowering her performance evaluation.

37. NOAA employees receive yearly performance standards pursuant to benchmark groups in four tiers: 0-39%, 40-59%, 50-79%, and 80-100%, as noted in the summary guidance document, a true and accurate copy of which is attached hereto as **Exhibit A.**

38. Scores within the 60-79% tier have substantively different descriptions (e.g. "Work results were accurate, effective and efficient") than scores within the 80-100% tier (e.g. "Exemplary work resulted in maximum impact").

39. Since becoming a supervisor, Ms. Kennelly has never had her performance evaluation rating drop from year-to-year.

40. Prior to 2022, Ms. Kennelly consistently earned performance pay increases and bonuses.

41. Moreover, Ms. Kennelly has never received any reprimands for her quality of work.

42. In sum, Ms. Kennelly has, at all times relevant to this Complaint, performed at a level of work that meets or exceeds her employer's reasonable expectations.

43. In November of 2021 (prior to the lawsuit settling), Ms. Kennelly received a review score of 82, earning a performance pay increase of $3,201 and a bonus amount of $1,300, totaling $4,501.

44. In November 2022, however, Ms. Kennelly received a score of 79 (within the lower 60-79% tier of scores), which was the first time since 2019 that her score was not within the 80-100% tier, and the first time since becoming an SPST in 2017 that her score had dropped from the previous year's score.

45. Defendant issued Ms. Kennelly a lower score, even though her work had been of the same consistent high quality that she had performed in prior years.

46. Defendant's rationale to Ms. Kennelly for this lower performance evaluation of failing to provide "sufficient feedback" is both untrue (Ms. Kennelly, in fact provided the same level of feedback as in prior years) and pretextual.

47. As a consequence, Ms. Kennelly's performance pay increase for 2022 was $2,982 and bonus was $525, totaling $3,507, which was markedly lower than the prior year's performance pay increase and bonus.

## COUNT ONE - RETALIATION
### (29 U.S.C. § 215 et seq.)

48. Plaintiff incorporates the preceding paragraphs by reference.

49. Defendant restricted Plaintiff's overtime opportunities in retaliation for having engaged in protected activity as defined by the Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3).

50. Defendant's restriction of overtime began in September of 2022, not long after paying the settlement for Plaintiff's overtime lawsuit.

51. Defendant singled out Plaintiff by restricting her overtime and explicitly granting preference for overtime to other similarly situated SPSTs within Plaintiff's department, further evidencing Defendant's intent to retaliate against Plaintiff.

52. Moreover, Mr. Clevenstine's comments at the September 2022 meeting and future communications evidence a specific targeting of Plaintiff over similarly-situated SPSTs.

53. In addition, Defendant restricted Plaintiff's leave time in retaliation for having engaged in protected activity as defined by the Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3).

54. Prior to the settlement of Plaintiff's overtime lawsuit, Plaintiff was able to request and obtain leave in substantially comparable, if not identical, situations.

55. Defendant's restriction of Plaintiff's leave began in September of 2022, not long after paying the settlement for Plaintiff's overtime lawsuit.

56. Defendant also gave Plaintiff a lower performance evaluation (placing her in a substantively lower performance bracket) in retaliation for having engaged in protected activity as defined by the Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3).

57. Prior to the settlement of Plaintiff's overtime lawsuit, Plaintiff had consistently placed within the 80-100% performance bracket since 2019 while performing at a substantially comparable standard of work.

58. Defendant gave Plaintiff a lower performance evaluation (placing her in a substantively lower performance bracket) despite Plaintiff performing at a substantially comparable standard of work.

59. Defendant's 2022 performance evaluation of Plaintiff occurred in November 2022, not long after paying the settlement for Plaintiff's overtime lawsuit.

60. As a result of Plaintiff's denial of overtime opportunities, Plaintiff suffered damages in the form of direct monetary loss, in an amount to be calculated at trial.

61. As a result of Plaintiff's lower performance evaluation, Plaintiff suffered direct monetary loss in the form of reduced bonuses and pay raises.

62. As a result of Plaintiff's lower performance evaluation and being placed within the 60-79% tier of benchmark performance standards, Plaintiff suffered reputational harm.

63. As a result of Plaintiff's restriction of leave time, Plaintiff suffered from reduced quality of life and health, as well as other mental and emotional damages.

WHEREFORE, Plaintiffs pray that this Court:

a. Order Defendant to rescind the targeted policy that restricts Plaintiff's overtime;

b. Order Defendant to correct Plaintiff's performance evaluation;

c. Order Defendant to rescind the targeted policy that restricts Plaintiff's leave after a night shift;

d. Award Plaintiff pecuniary losses caused by Defendant's unlawful retaliation;

e. Award Plaintiff compensatory damages for the mental, emotional, and reputational harm caused by Defendant's unlawful retaliation;

f. Award Plaintiff punitive damages for Defendant's intentional retaliatory conduct;

      g.      Award Plaintiff reasonable attorney's fees and costs to be paid by Defendant under the FLSA; and

      h.      Grant to Plaintiff such further relief as the Court deems just and proper.

Dated: March 27, 2023

                                    Respectfully submitted,

[signature]

                                    Joshua L. Jewett (VSB No. 76884)
                                    Pierce McCoy, PLLC
                                    101 West Main Street, Suite 101
                                    Norfolk, Virginia 23510
                                    Tel: (804) 564-2030
                                    Fax: (757) 257-0387
                                    jjewett@piercemccoy.com

                                    Matthias J. Kaseorg (VSB No. 86421)
                                    *(CFC Application Forthcoming)*
                                    Pierce McCoy, PLLC
                                    1111 E. Main St, Suite 1800
                                    Richmond, VA 23219
                                    Tel: (804)564-2030
                                    mkaseorg@piercemccoy.com

                                    *Counsel for Plaintiffs*